UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
ELIZABETH GRANT/GRACE GRANT,

                Plaintiffs,

        -v-

ADA NICOLETTA CAFFERRI, *et al.*,

                Defendants.
------------------------------------------------------------x
ELIZABETH GRANT/GRACE GRANT,

                Plaintiffs,

        -v-

LORRAINE VULTAGGIO, *et al.*,

                Defendants.
------------------------------------------------------------x
ELIZABETH GRANT/GRACE GRANT,

                Plaintiffs,

        -v-

ROBERT RESAN, *et al.*,

                Defendants.
------------------------------------------------------------x
ELIZABETH GRANT/GRACE GRANT,

                Plaintiffs,

        -v-

QUEENS SUPREME COURT, *et al.*,

                Defendants.
------------------------------------------------------------x
ELIZABETH GRANT/GRACE GRANT,

                Plaintiffs,

        -v-

ASPCA, *et al.*,

                Defendants.
------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **DEC 04 2019** ★

BROOKLYN OFFICE

RD ___ 12/4/19
J.B.

**MEMORANDUM AND ORDER**
19-CV-2148 (RRM) (LB)

19-CV-2204 (RRM) (LB)

19-CV-2911 (RRM) (LB)

19-CV-3244 (RRM) (LB)

19-CV-3689 (RRM) (LB)

Plaintiff Elizabeth Grant ("Grant") brings these five *pro se* actions on behalf of herself and her mother, alleging that defendants – who are largely the same in all five actions – violated her constitutional rights. Grant has applied for leave to proceed *in forma pauperis* and for appointment of counsel in all five cases, and has filed documents purporting to be an "Amended Complaint" in two of the cases: *Grant v. Vultaggio*, No. 19-CV-2204 (Doc. 18) and *Grant v. Queens Supreme Court*, No. 19-CV-3244 (Doc. No. 9). Grant may proceed *in forma pauperis* in each of the five actions. For the reasons set forth below, the "Amended Complaints" are construed as supplemental pleadings, the complaints in all five actions are dismissed, the cases are consolidated under Docket No. 19-CV-2148, and Grant is given leave to file a single amended complaint under the docket number within 30 days of the date of this Order. The motions for appointment of counsel are denied at this time.

## BACKGROUND

The complaint in each of these five actions consists of a completed civil rights complaint form, to which Grant has added a rambling, handwritten narrative. Grant's handwriting is illegible in places and she alleges the facts in a disjointed, stream-of-consciousness style. Since these allegations are difficult to understand, the Court has taken judicial notice of several other documents in order to place Grant's allegations in the proper context. Specifically, the Court will take judicial notice of *Grant v. ASPCA*, No. 16-CV-2765 (ER), 2017 WL 1229737 (S.D.N.Y. Mar. 31, 2017) ("*Grant I*") – a case in which Grant unsuccessfully sued some of the defendants named in the instant actions in the United States District Court for the Southern District of New York ("SDNY"); allegations Grant made in *Grant v. Warden of Rose M. Singer Center*, No. 19-CV-2046 (RRM); and court documents attached to the complaint in *Grant v. Zaro*, No. 19-CV-2832 (RRM) (LB).

The allegations in the instant actions principally relate to events which occurred on or before January 28, 2016, and on or about August 29, 2018. At these times, Grant was living with her elderly mother, Grace, in a multi-story house in Jackson Heights, Queens. Sometime prior to January 2016, Grant took in dozens of rescue animals, which she kept in the house.

At some point, Grace Grant was "hit in the head by mistake." (Compl. in *Grant v. Vultaggio* (Doc. No. 2 in 19-CV-2204) at 9; Compl. in *Grant v. ASPCA* (Doc. No. 1 in 19-CV-3689) at 5.)[1] Thereafter, the Jewish Association for Services for the Aged ("JASA") began providing adult protective services to Grace. The social worker assigned to the case, Lisa Mallon, wanted to rid the home of the many rescue animals and, to that end, "tipped of[f]" the New York City Police Department (the "NYPD") about conditions in the house. (*Id.*) In response to that tip, Police Officer Lorraine Vultaggio of the NYPD's 115th Precinct allegedly entered the home on or about January 6, 2016, where she observed approximately 40 cats and 10 dogs, some which were allegedly in bad condition. Based on Vultaggio's affidavit, Judge Michelle A. Armstrong of New York City Criminal Court, Queens County, issued a warrant to search the Grants' home. That warrant authorized the NYPD to seize the animals and to deliver them "to the ASPCA Animal Hospital, or other veterinary partners, hospitals, and facilities, for examination and treatment and ... to retain such property until directed otherwise by [the] Court." *Grant I*, 2017 WL 1229737, at *2.

On January 28, 2016, the NYPD executed the search warrant, seized Grant's rescue animals, and placed them in the custody of the American Society for the Prevention of Cruelty to Animals (the "ASPCA"). There, they were examined by Dr. Robert Reisman, an ASPCA

---

[1] Since the complaints are not paginated, the Court will use the "Page ID #" assigned to the page by the Court's Electronic Case Filing ("ECF") system.

veterinarian. He diagnosed them with various maladies and billed Grant for services he allegedly rendered.

In the months following the seizure, Grant wrote letters to the Queens County District Attorney's Office and to property clerks at the NYPD, demanding the return of the animals. In mid-April 2016, after learning that the animals were in the custody of the ASPCA, Grant commenced *Grant I* against the ASPCA, the City of New York (the "City"), the NYPD, Queens County, Queens County District Attorney Richard A. Brown, and Assistant District Attorney ("ADA") Nicoletta Caferri, alleging violations of her First, Fourth, and Fourteenth Amendment rights arising from the seizure and continued retention of her animals.[2]

Two days after Grant commenced *Grant I* in the SDNY, a warrant was issued for Grant's arrest on charges that she violated sections 353 and 353-a of New York Agriculture and Markets Law – statutes which prohibit the mistreatment of animals. Grant elected to go to trial on these charges and was convicted of multiple misdemeanor counts. On April 30, 2018, Queens Criminal Court Judge Stephanie Zaro sentenced Grant to three years' probation. Under the conditions of probation set by Judge Zaro, Grant was prohibited from owning, harboring, or having custody or control of any animals for ten years and was required to submit to unannounced home visits by probation officers.

On the morning of August 29, 2018, Probation Officers Monique Begy and Azalea Soba made an unannounced visit to the Grants' home. According to Grant, the officers knew that Grant occupied the basement apartment, yet pushed their way into the upper portion of the house, occupied by Grant's mother, Grace. There, the officers found 16 animals which, Grant claims, belonged to her mother. According to a Department of Probation document containing

---

[2] Although Grant refers to this prosecutor as ADA Cafferri, the Court assumes that she is referring to Nicoletta Caferri, the Chief of the Queens County District Attorney's Animal Cruelty Prosecutions Unit.

the "Specification(s) of Alleged Violation of Probation," Grant assaulted one of the probation officers. Grant was arrested and dragged out of the house without being allowed to dress. She was subsequently charged with various felony offenses, including assault in the second degree, as well as violations of probation. Grant's complaints suggest that she is currently in jail awaiting a hearing on the alleged violations of probation and a trial on the felony offenses.

The Complaints

### *Grant v. Cafferri*

The complaint in the first action – *Grant v. Cafferri*, No. 19-CV-2148 (RRM) (LB) – is dated April 1, 2019, and was delivered to prison authorities for mailing that same day. It names at least seven defendants, four of whom – the ASPCA, the NYPD, District Attorney Brown, and ADA Cafferri – were also named as defendants in *Grant I*. Three others were not: Probation Officers Begy and Soba and Dr. Robert Reisman.[3]

The allegations in this pleading pertain largely to the events of August 29, 2018. Grant alleges that Begy and Soba unlawfully entered the "wrong premises" when they pushed their way into the portion of the house occupied by Grant's mother, despite having been told by Grant and her mother that Grant lived in the basement. The pleading alleges that the officers engaged in "elder abuse" by pushing Grant's elderly mother and forcing her to wait on the porch without her walker, cane, phone, hearing aid, or access to a bathroom. (*Cafferri* Compl. (Doc. No. 1 in 19-CV-2148) at 6–7, 9.) The complaint also alleges that Begy and Soba falsely accused Grant of assault. (*Id.* at 8.)

---

[3] The caption of the complaint appears to list "Robert Resan" as a defendant. However, this individual is not named as a defendant in Section I.B, that section of the form complaint which purportedly lists all defendants. In addition, there are no allegations relating to this defendant in the body of the complaint. In mid-August 2019, Grant filed an amended complaint in another case clarifying that the person she intends to sue is Dr. Robert Reisman, an ASPCA veterinarian.

The complaint implies that the police used excessive force and otherwise acted improperly in arresting Grant. It alleges that Grant was dragged by her arms with her knees scraping the ground, then "harshly put into the car," causing injury to her arms, knees, and back. (*Id.* at 11.) In addition, the complaint alleges that Grant, who was in a "tiny nighty" at the time of her arrest, was not allowed to dress or to bring tampons or sanitary napkins, thereby "degrading and humiliating" her in front of neighbors. (*Id.* at 6–7.) However, Grant's pleading does not name the officers responsible for these actions or provide any information from which their identity could be determined.

The allegations concerning the ASPCA, Reisman, Brown, and Caferri appear to relate primarily to Grant's April 2018 conviction. The complaint appears to allege that the "District Attorney could not prove her case through evidence," and accordingly "paid witnesses" to perjure themselves. (*Id.* at 9.) Grant suggests that her conviction was caused by "character assassinat[ion] ... in the media," and in disregard of 500 photographs documenting that her animals were well-treated. (*Id.* at 10.)

The complaint principally seeks relief relating to Grant's criminal cases, requesting that her "false conviction" be reversed and that she be granted "a civil hearing for the illegal search and seizure." (*Id.* at 12.) However, the pleading also seeks restitution for her animals, compensation for damage done to the house during the search, and damages for "character assassination" and "pain and suffering." (*Id.*)

### *Grant v. Vultaggio*

Like the complaint in the first action, the original complaint in the second action – *Grant v. Vultaggio*, No. 19-CV-2204 (RRM) (LB) – is dated April 1, 2019. However, unlike the first action, the complaint was not delivered to the prison authorities for mailing until April 4, 2019, and was addressed to the SDNY, which subsequently transferred the case to this Court. The

original complaint in that action named four of the same defendants named in the first action – the ASPCA, District Attorney Brown, ADA Caferri, and Dr. Reisman.  It also named the NYPD's 115th Precinct and two individuals not named in the first action – Officer Vultaggio and JASA social worker Mallon – though the names of the police officer, the veterinarian, and the social worker were either misspelled or illegible.

Although the complaint contains eight handwritten pages of facts, the pleading appears to contain few allegations concerning the five individual defendants named therein.  It contains one mention of Mallon, implying that she "tipped of[f]" Vultaggio regarding the condition of the animals in the home.  (*Vultaggio* Compl. (Doc. No. 2 in 19-CV-2204) at 9.)  It accuses Vultaggio of "trespassing" on January 6, 2016; concocting evidence against Grant; searching the Grants' home without probable cause; and breaking doors, windows, and furniture during the search. (*Id.*)  The complaint alleges that District Attorney Brown issued "press releases ... filled with lies" in order to "destroy the lives of the innocent."  (*Id.* at 10, 11.)  The complaint states that ADA Caferri was "used to help charge and convict the innocent animal owner."  (*Id.* at 11.)  The pleading alleges that Dr. Reisman denied a veterinarian retained by Grant's attorney, Richard Rosenthal, access to the animals seized from the home; submitted "fraudulent bills" relating to his treatment of the animals; and falsely accused Grant of animal abuse, giving rise to the charges of which she was convicted.  The complaint suggests that the charges pending against Grant stem from the fraudulent bills.  (*Id.* at 15.)

With respect to the institutional defendants, the complaint alleges a conspiracy by the ASCPA, the 115th Precinct, and non-defendant JASA to "steal" Grant's animals.  (*Id.* at 10.) According to Grant, the ASPCA is a "for profit" fraud which falsely accuses animal owners like her and steals their animals as a "publicity stunt for donations."  The complaint implies that the

ASPCA euthanized some of Grant's animals, sold others, and received a "tax right [*sic*] off" as a result of its activities. (*Id.* at 10, 15.)

The complaint alleges that defendants' actions violated her "Fourth Amendment rights to privacy and property." (*Id.* at 15.) It demands that the animals be returned or that Grant be compensated for them. (*Id.*) In addition, it seeks damages for the furniture, doors, and windows that were broken during the execution of the search warrant. (*Id.*)

In mid-August 2019, Grant filed a six-page document entitled "Amended Complaint." On the first page, Grant seeks to correct the misspelling of some defendants' names. However, the caption omits the ASPCA and the body of the pleading lists only those defendants whose names Grant seeks to correct: Vultaggio, Reisman, Caferri, and Mallon. In addition, the fact section of the "Amended Complaint" consists of a single paragraph, which alludes to an addendum which was not attached to the pleading. In light of Grant's *pro se* status, the Court construes the "Amended Complaint" as a supplemental pleading, which seeks only to correct or add to information contained in the original complaint, rather than to supersede it.

### *Grant v. Resan*

The complaint in the third action – *Grant v. Resan*, No. 19-CV-2911 (RRM) (LB) – which is dated May 8, 2019, pertains largely to the August 29, 2018, incident. The caption of the complaint lists seven defendants, all of whom were named as defendants in the prior two actions. Robert Resan (t/n Robert Reisman), the ASPCA, the NYPD's 115th Precinct, District Attorney Brown, ADA Caferri, and Probation Officers Begy and Soba. However, paragraph I.B of the complaint – the section which purported lists the parties – does not mention the veterinarian or the District Attorney, and names an additional defendant: Judge Stephanie Zaro.

The complaint in *Resan* asserts that the charges on which Grant is currently being held were fabricated by Begy and Soba. Grant also alleges that judges and the prosecutor have

conspired to keep her in jail, and that she would be released if they were to hold a hearing on the violation of probation. In addition, the complaint alleges that the NYPD somehow profits when they send animals to the ASPCA, that Judge Zaro engaged in "character assassination" by crediting the testimony of Dr. Reisman and wrongly refused to recuse herself, that Dr. Reisman fraudulently billed Grant for services that were unnecessary or not actually delivered, and that District Attorney Brown issued a "press release of lies." (*Resan* Compl. (Doc. No. 1 in 19-CV-2911) at 17.)

The complaint specifically alleges four constitutional violations. First, the complaint makes a First Amendment retaliation claim against ADA Caferri, alleging that the prosecutor asked Judge Zaro to jail Grant because Grant was defending herself on Facebook. Second, the complaint alleges that Grant's Fourth Amendment rights were violated because her home was searched without a warrant and without probable cause, and that the evidence seized during the unlawful search should be suppressed. Third, Grant argues that her procedural due process rights have been or are being violated by the failure to hold a prompt hearing on the violations of probation and by taking her animals without due process. Fourth, Grant argues that her Eighth Amendment rights were violated because she has been denied bail.

The complaint does not appear to request money damages. However, the pleading clearly requests that the pending criminal charges against her be dismissed and that her 2018 conviction be reversed "for lack of evidence and insubstantial evidence." (*Id.* at 5.) Grant alleges that the prosecution has no evidence that she committed any crimes aside from "hearsay" from "lying probation officers." (*Id.*)

### *Grant v. Queens Supreme Court*

The original complaint in the fourth action – *Grant v. Queens Supreme Court*, No. 19-CV-3244 (RRM) (LB) – is undated but was received by the Court on May 28, 2019. It names

many of the same defendants named in one or more of the three prior actions: the ASPCA, the 115th Precinct, District Attorney Brown, ADA Caferri, Officers Begy and Soba, and Judge Zaro. In addition, the action names two new defendants: the Queens Criminal and Supreme Courts.

The original complaint in the fourth action principally expands on Grant's claim that Begy and Soba engaged in an unlawful search and seizure. It alleges that Grant lived in the basement apartment and that her mother occupied the upper floors of their house. (*Queens Sup. Ct.* Compl. (Doc. No. 1 in 19-CV-3244) at 6.) According to the pleading, the 16 animals found by the probation officers were Grace's "companion pets" and lived in her portion of the house. (*Id.*) Although Grant told Soba that she lived in the basement, and Grace told both probation officers the same when they arrived on August 29, 2018, the officers nonetheless pushed their way into Grace's quarters, allegedly to lure Grant upstairs and near the pets so that she could be arrested for violating probation. (*Id.* at 6–7.) The complaint alleges that this was "a planned warrantless search and seizure," designed to "entrap" Grant. (*Id.* at 11.)

The complaint not only alleges that Begy and Soba violated Grant's Fourth Amendment rights, but alleges a Fourth Amendment violation by Vultaggio, who is not named as a defendant in the fourth action. The complaint also alleges that Caferri and Judge Zaro engaged in First Amendment retaliation because they told Grant that if she continued to defend herself on Facebook she would "end up in jail." (*Id.* at 13.) Although Grant did not complete that portion of the form complaint entitled "Relief," the pleading repeatedly requests the Court's help in having Grant released from Rikers Island.

On June 12, 2019, Grant filed what purports to be an "Amended Complaint" by delivering the six-page document to prison authorities. That document (Doc. No. 10) names the same defendants as did the original complaint (with the exception of Queens Criminal Court) and six new defendants: Officer Vultaggio; Dr. Reisman; Judge Paynter; an ASPCA lawyer named

Elizabeth Brindler; Lisa Mallon; and Grant's estranged brother, Ed Grant. That pleading does not allege any facts relating to these new defendants – or any facts at all, for that matter. Although a notation on page 4 of the form pleading states that the factual allegations are "on added paper," no additional pages are attached to the form complaint. To be sure, the Court has received no less than 25 letters from Grant subsequent to the "Amended Complaint," but it is impossible to determine whether any of these submissions were intended to be the attachment. Accordingly, in light of Grant's *pro se* status, the Court will construe the "Amended Complaint" as a supplemental pleading, seeking to add the six additional defendants.

### *Grant v. ASPCA*

The fifth action – *Grant v. ASPCA*, No. 19-CV-3689 (RRM) (LB) – was originally filed in the SDNY in April 2019, but transferred to this district in June 2019. The caption of the complaint in this action names six of the defendants named in the original complaint in the fourth action – the ASPCA, the NYPD, District Attorney Brown , ADA Caferri, and Probation Officers Begy and Soba. The caption does not name Judge Zaro, but the body of the complaint contains roughly the same allegations regarding the judge as did the original complaint in the fourth cause of action.

The complaint in the fifth action describes the event of August 29, 2018, in detail, largely repeating facts alleged in the case described above. In a section entitled "Injuries," Grant again describes the physical injuries she suffered when she was arrested and dragged to the police car. In a section entitled "Relief," Grant implies that her Fourth Amendment rights were violated by defendant Probation Officers' "illegal warrantless search and seizures, " that she is falsely imprisoned on "bogus cases," and that her due process rights were violated because she has yet to receive a hearing on the alleged violation of probation. (Compl. (Doc. No. 1) at 4.) The

complaint expressly requests that she be released from Rikers Island and that the ASPCA be investigated. (*Id.*)

<u>Motions for Appointment of Counsel</u>

In all five cases, Grant has filed an application for the Court to appoint counsel on her behalf. However, none of those applications articulate a persuasive reason for doing so in these civil cases. In all of the applications, Grant states only that she needs a lawyer because she is innocent and has no money. (*Grant v. Cafferri*, No. 19-CV-2148, Doc. No. 15 at ¶¶ 2–3; *Grant v. Vultaggio*, No. 19-CV-2204, Doc. No. 19, at ¶¶ 2–3; *Grant v. Resan*, No. 19-CV-2911, Doc. No. 9 at ¶¶ 2–3; *Grant v. Queens Sup. Ct.*, No. 19-CV-3244, Doc. No. 25 at ¶¶ 2–3; *Grant v. ASPCA*, No. 19-CV-3689, Doc. No. 9 at ¶¶ 2–3.)

## STANDARD OF REVIEW

It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read a plaintiff's *pro se* complaint liberally and interpret it raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008). However, 28 U.S.C. § 1915A requires a district court to screen a civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and to "dismiss the complaint, or any portion of the complaint, if the complaint – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Similarly, under 28 U.S.C. § 1915(e)(2)(B), a court must dismiss an action filed *in forma pauperis* by a non-prisoner if the court determines that the action "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief."

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order to state a claim for relief, a complaint "must contain: (1) a short and plain statement of the grounds for the court's jurisdiction ...; 2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought ...." In addition, Rule 1 1(a) provides that if the plaintiff is unrepresented, the complaint must be signed by the plaintiff personally.

## DISCUSSION

A.    Consolidation of Actions

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve common question of law or fact, the court may ... consolidate the actions." The trial court has broad discretion to determine whether consolidation is appropriate. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990). Cases may be consolidated even where the complaints name different parties or assert distinct causes of action. *See Allah v. City of New York*, No. 15-CV-6852 (CBA) (LB), 2016 WL 676394, at *3 (E.D.N.Y. Feb. 17, 2016); *Caractor v. Hous. Bridge 93rd Ave. Family Residence*, Nos. 13-CV-3800, 13-CV-7043 (SJF) (AKT), 2014 WL 1351402, at *2–3 (E.D.N.Y. Apr. 2, 2014).

These five actions name many of the same defendants, pertain to the same incidents, and involve common questions of law and fact. Accordingly, the Court directs the Clerk of Court to (1) consolidate the five actions under Docket No. 19-CV-2148 (RRM) (LB), the first of the five actions to be opened, and (2) close the other four cases: Nos. 1 9-CV-2204 (RRM) (LB), 19-CV-2911 (RRM) (LB), 19-CV-3244 (RRM) (LB), and 19-CV-3689 (RRM) (LB). All future filings pertaining to those four actions shall be docketed under No. 1 9-CV-2148 (RRM) (LB).

B.    Claims by or on Behalf of Grace Grant

Preliminarily, the Court notes that none of the complaints in these actions is signed by Grace Grant, as required by Rule 11(a). Although the complaints are signed by Elizabeth Grant,

a *pro se* litigant cannot represent anyone other than herself, not even her own relatives. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Accordingly, any claims brought by Grace Grant or by Elizabeth Grant on behalf of her mother are dismissed without prejudice to renewal by Grace Grant. This includes claims that Begy and Soba engaged in "elder abuse," claims that the officers unlawfully searched Grace Grant's portion of the house, claims that they unlawful seized her "companion animals," and claims that they deprived Grace Grant of access to property or a bathroom during the August 29, 2018, search.

## C. Judicial Immunity

Judges have absolute immunity for acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (upholding applicability of judicial immunity in section 1983 actions); *Burdick v. Town of Schroeppel*, 717 F. App'x 92, 93 (2d Cir. 2018) (summary order) ("Judges acting in their judicial capacity are absolutely immune from suit, even where the plaintiff asserts constitutional violations under § 1983.") (citing *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "[J]udicial immunity is not overcome by allegations of bad faith or malice," and a judge cannot "be deprived of immunity because the action [the judge] took was in error ... or was in excess of [the judge's] authority." *Mireles*, 502 U.S. at 11–13 (citations and internal quotation marks omitted) (second alteration in original). Immunity may only be overcome where (1) the challenged acts were not taken in the judge's judicial capacity or (2) the acts, "though judicial in nature, [were] taken in the complete absence of all jurisdiction." *Id.* at 12; *see also Gross v. Rell*, 585 F.3d 72, 82 (2d Cir. 2009) (same).

The only allegations against Judge Zaro pertain solely to judicial actions she took while presiding over Grant's criminal case. The complaints in *Resan* and *Queens Supreme Court*, the only cases to name Judge Zaro as a defendant, accuse the judge of incorrectly crediting Dr.

Reisman's testimony, improperly refusing to recuse herself, and threatening to jail Grant if she continued to post about the case on social media. Even if the latter threat violated Grant's First Amendment rights, all three actions were unquestionably judicial acts for which Judge Zaro is absolutely immune from monetary liability.

To the extent that Grant is seeking injunctive relief against Judge Zaro, her claims are precluded by the Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983). This law bars all claims for injunctive relief against a judicial officer for a judicial action or omission unless a declaratory decree was violated, or declaratory relief was unavailable. Grant does not allege that Judge Zaro acted in violation of a declaratory decree. *See El-Bey v. Clott*, No. 17-CV-271 (BMC), 2017 WL 280710, at *2 (E.D.N.Y. Jan. 20, 2017). Therefore, Grant's claims against Judge Zaro are dismissed with prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2).

D.   Prosecutorial Immunity

Prosecutors enjoy absolute immunity when they engage in "advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Thus, a prosecutor enjoys absolute immunity for acts undertaken "in preparing for the initiation of judicial proceedings or for trial" or that are "within the scope of [the prosecutor's] prosecutorial duties." *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005). A prosecutor

> acts within the scope of her duties even if she makes false
> statements during judicial proceedings, *see Burns v. Reed*, 500
> U.S. 478, 490 (1991), knowingly uses false testimony, *Shmueli*,
> 424 F.3d at 237, deliberately withholds exculpatory evidence, *id.*,
> engages in malicious prosecution, *id.* at 238, or attempts to
> intimidate an individual into accepting a guilty plea, *Peay v. Ajello*,
> 470 F.3d 65, 67–68 (2d Cir. 2006).

*D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (summary order).

Moreover, "no First Amendment retaliation claim based on an arrest and/or criminal prosecution is available where the prosecution at issue was supported by probable cause." *Allen v. City of New York*, No. 03-CV-2829 (KMW) (GWG), 2007 WL 24796, at \*22 (S.D.N.Y. Jan. 3, 2007) (citing *Mozzochi v. Borden*, 959 F.2d 1174, 1179–80 (2d Cir. 1992)) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government.").

The only specific allegations concerning ADA Caferri in any of these cases relate to her performance of her prosecutorial duties. Although Grant alleges that Caferri prosecuted Grant because of her comments on Facebook and paid witnesses to perjure themselves, the ADA nonetheless enjoys prosecutorial immunity for these acts. *See Lee v. Willins*, 617 F.2d 320, 322 (2d Cir. 1980) (prosecutor absolutely immune from claims of suborning perjury and falsifying evidence). Accordingly, all claims against defendant Caferri are dismissed with prejudice.

In contrast, Grant's claims against District Attorney Brown appear to have something to do with "press releases" containing "lies" about Grant. (*Resan* Compl. at 17.) "Because absolute immunity only extends to conduct related to prosecutorial functions that are intimately associated with initiating or presenting the State's case, it does not immunize prosecutors from liability for ... making defamatory statements to the press ...." *Flagler v. Trainor*, 663 F.3d 543, 544 (2d Cir. 2011). Grant's complaints, however, do not specifically identify the allegedly false "press releases," much less identify the allegedly false statements contained therein. Although a plaintiff "need not allege the <u>exact</u> time, place and speaker of each defamatory statement, ... the plaintiff must provide enough context for the defendants to defend themselves – namely, an indication of who made what statements, when, and to whom." *Wellner v. City of New York*, No. 16-CV-7032 (JGK), 2019 WL 15110 22, at \*2 (S.D.N.Y. Mar. 22, 2019) (internal quotation

16

marks and citations omitted). Accordingly, Grant's claims against defendant Brown are dismissed without prejudice and with leave to replead.

E.    Witness Immunity

"It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under § 1983 based on their testimony." *Rolon v. Henneman*, 389 F. Supp. 2d 517, 519 (S.D.N.Y. 2005), *aff'd*, 517 F.3d 140 (2d Cir. 2008). This immunity is rooted in the belief that "[a] witness's apprehension of subsequent damages liability might induce two forms of self-censorship." *Briscoe v. LaHue*, 460 U.S. 325, 333 (1983). "First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability." *Id.* In these cases, Grant claims that Dr. Reisman and other witnesses testified falsely, and that their perjurious statements resulted in her conviction. However, because Dr. Reisman and other witnesses enjoy immunity for statements made at trial or in the grand jury, these claims are dismissed with prejudice.

F.    Eleventh Amendment Immunity

To the extent that Grant seeks money damages from Queens Supreme and Criminal Courts, these defendants are immune from liability because the Eleventh Amendment of the United States Constitution prohibits state entities from being sued for damages in federal court. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity ...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Because both the Queens Supreme and Criminal Courts are part of the New York State Unified Court System, *see* N.Y. Const., art. 6, § 1(a), the

Eleventh Amendment bars Grant's claims against the state courts from proceeding in federal court. *See Gollomp*, 568 F.3d at 368 (holding that the New York State Unified Court System "is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity"); *Murray v. Guzman*, No. 19-CV-1959 (CM), 2019 WL 1745744, at *3 (S.D.N.Y. Apr. 17, 2019). Grant's claims for money damages against these two defendants are, therefore, dismissed with prejudice. *See* 28 U.S.C. § 1915A(b)(2); 28 U.S.C. § 1915(e)(2)(B)(iii).

To the extent that Grant is seeking injunctive relief in the form of an order directing the Criminal Court to reverse her state conviction or an order directing the Supreme Court to dismiss ongoing criminal proceedings, the Court cannot grant this relief. First, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release ...." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)). Thus, Grant's challenges to the constitutionality of her state conviction and her challenge to the bail imposed upon her re-arrest are not cognizable in these civil rights actions. *See id.* As this Court informed Grant in its May 8, 2019, order in *Grant v. Warden of Rose M Singer Ctr.*, No. 19-CV-2046 (RRM) (LB), she must exhaust all remedies available in state court before seeking a writ of habeas corpus in federal court.

Second, the Supreme Court has long held that federal courts are not to enjoin ongoing state court criminal proceedings except in specific, narrow circumstances. *See Younger v. Harris*, 401 U.S. 37, 56 (1971). Federal courts should not intervene "'when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court,' unless the plaintiff can show extraordinary circumstances to warrant intervention in the ongoing proceeding." *Booker v. Ewald*, No. 15-CV-4253 (JFB), 2015 WL 4716255, at *2 (E.D.N.Y. Aug. 7, 2015) (quoting

*Hansel v. Springfield*, 56 F.3d 391, 393 (2d Cir. 1995)). Grant herself alleges that there is an ongoing state criminal proceeding, and courts have recognized that an important state interest is implicated in the resolution of criminal cases. *See id.* Grant has not alleged that the state courts are an inadequate forum for raising constitutional claims, or alleged facts showing extraordinary circumstances that would warrant intervention in her case.

G.     Claims Against the NYPD and the 115th Precinct

Chapter 17, Section 396, of the New York City Charter provides: "All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." Accordingly, the "NYPD, as a city agency, is not a suable entity." *Paige-El v. Herbert*, 735 F. App'x 753, 755 (2d Cir. 2018) (summary order); *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("The district court correctly noted that the NYPD is a non-suable agency of the City."). A precinct is a division of the NYPD and is also a non-suable entity. *See, e.g., Warner v. City of New York*, No. 12-CV-2799 (CBA) (LB), 2012 WL 2501070, at *2 (E.D.N.Y. June 27, 2012); *Denslow v. NYPD-77th Precinct*, No. 11-CV-384 (KAM), 2011 WL 1348362, at *2 (E.D.N.Y. Apr. 8, 2011). Accordingly, Grant's claims against the NYPD and/or the 115th Precinct are dismissed with prejudice.

H.     Collateral Estoppel and *Res Judicata*

Even if Grant were to recast her claims against the NYPD and/or the 115th Precinct as claims against the City of New York, her claims against the City, the ASPCA, Brown, and/or Caferri arising from the January 28, 2016, search and seizure would be barred by collateral estoppel and/or *res judicata*. The doctrine of collateral estoppel, or issue preclusion, "bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding if that party had a full and fair opportunity to litigate the

19

issue in the prior proceeding ...." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992). "The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).

As noted above, *Grant I*, filed on April 13, 2016, alleged that the ASPCA, the City, the NYPD, Brown, Caferri, and other defendants violated Grant's First, Fourth, and Fourteenth Amendment rights by seizing her animals on January 28, 2016, and retaining them thereafter. Judge Ramos granted the defendants' motions to dismiss in an opinion which thoroughly analyzed Grant's claims. *See Grant I*, 2017 WL 1229737. The doctrine of collateral estoppel precludes Grant from re-litigating the claims which Judge Ramos dismissed. In addition, the doctrine of *res judicata* precludes Grant from raising claims against the ASPCA, the NYPD, Brown, or Caferri that could have been raised in *Grant I*.

While Grant's claims relating to the August 29, 2018, search and seizure of her animals may not be barred by these doctrines, Grant does not have standing to contest the seizure of these animals or to seek their return or restitution for these 16 pets. Grant specifically alleges that they belong to her mother, not to her. (*Queens Sup. Ct.* Compl. at 6–7.)

I.     The § 1983 Claims Against Individual Defendants

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person acting under color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely

private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)). Second, the conduct complained of "must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Cornejo*, 592 F.3d at 127 (quoting *Pitchell*, 13 F.3d at 547); *see also Moore v. Toulon*, No. 18-CV-5276 (JMA) (ARL), 2019 WL 885932, at *2 (E.D.N.Y. Feb. 22, 2019). In addition, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

    1.    <u>Claims Against Mallon and Dr. Reisman</u>

    Grant does not allege facts suggesting that either Mallon or Dr. Reisman violated her federal statutory or constitutional rights. First, the only allegations in the complaints pertaining to Mallon state that she "tipped of[f]" the police regarding conditions in the house. A private actor who makes false statements to the police with the intent to have an innocent person arrested can be held liable under § 1983 "for invoking the state's power to intentionally violate a citizen's constitutional rights." *Weintraub v. Bd. of Educ.*, 423 F. Supp. 2d 38, 58 (E.D.N.Y. 2006). However, Grant does not allege what information Mallon provided to the police, much less allege that the information was false. Accordingly, Grant's claims against defendant Mallon are dismissed without prejudice and with leave to replead.

    Second, the only allegations against Dr. Reisman are that he submitted fraudulent bills to Grant, prevented her from having the animals examined by an independent veterinarian retained by defense counsel, and falsely accused her of animal abuse. Although Grant alleges that the fraudulent billing somehow led to her incarceration, the documents attached to Grant's complaint in *Grant v. Zaro*, No. 19-CV-2832 (RRM) (LB), indicate that she was initially convicted of violating section 353 of the New York Agriculture and Markets Law and subsequently jailed for

various violations of probation and assault. (*See Zaro* Compl. (Doc. No. 1) at 38). Grant alleges

no facts to suggest that the allegedly fraudulent billing violated her federal constitutional or

statutory rights. Similarly, Grant does not allege that Dr. Reisman's refusal to permit the

independent veterinarian access to the animals deprived her of exculpatory evidence or otherwise

violated her federal rights. Accordingly, these claims against defendant Reisman are dismissed

without prejudice and with leave to replead.

Grant's claim that Dr. Reisman falsely accused her of animal abuse presumably pertains

to his testimony before the grand jury or at trial. Because Dr. Reisman enjoys witness immunity

with respect to this testimony, any claim attempting to impose liability for false testimony is

dismissed with prejudice.

### 2. Claims Against Officer Vultaggio

Grant's claims against Officer Vultaggio appear to relate solely to the legality of the

January 28, 2016, search and appear to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In

*Heck*, the Supreme Court held that in order to recover damages for "harm caused by actions

whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove

that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus ...." *Id.* at 486–87. "[A] suit

for damages attributable to an allegedly unreasonable search may lie even if the challenged

search produced evidence that was introduced in a state criminal trial resulting in the

§ 1983 plaintiff's still-outstanding conviction," but only if the suit "would not necessarily imply

that the plaintiff's conviction was unlawful." *Id.* at 487 n.7 (emphasis omitted). In other words,

*Heck* would not preclude a §1983 action to recover damages for "an unlawful search whose

illegality would not affect the validity of the conviction." *Woods v. Candela*, 47 F.3d 545, 546

22

(2d Cir. 1995); *accord Toliver v. City of New York*, Nos. 10-CV-3165, 10-CV-6619 (PAC)

(JCF), 2011 WL 4964919, at *8 (S.D.N.Y. Sept. 15, 2011) ("[W]here the plaintiff's ... conviction

was not dependent on the allegedly unconstitutional seizure, a §1983 claim is not barred by

*Heck*."), *report and recommendation adopted*, 2011 WL 4964665 (S.D.N.Y. Oct. 18, 2011).

Although "[t]he inquiry as to whether a recovery on [a] § 1983 ... claim ... would

necessarily imply the invalidity of any conviction ... is inherently a factual one," *Covington v.*

*City of New York*, 171 F.3d 117, 122 (2d Cir. 1999), it is clear that Grant's 2018 conviction was

predicated largely, if not entirely, on evidence uncovered during the search. Accordingly, the

claim that Vultaggio violated Grant's Fourth and Fourteenth Amendment rights by unlawfully

searching her home and seizing her pets is barred by *Heck*.

To the extent that Grant is seeking to hold Vultaggio or other officers liable for damage

to her house and furniture during the search, her complaints do not allege sufficient facts to make

out a Fourth Amendment claim. "[I]t is well recognized that 'officers executing search warrants

on occasion must damage property in order to perform their duty.'" *Cody v. Mello*, 59 F.3d 13,

16 (2d Cir. 1995) (quoting *Dalia v. United States*, 441 U.S. 238, 258 (1979)). However,

"[e]xcessive or unnecessary destruction of property in the course of a search may violate the

Fourth Amendment ...." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). Because Grant has

not alleged any facts to suggest that Vultaggio or other officers engaged in excessive or

unnecessary destruction of property, she had not stated a Fourth Amendment claim.

Accordingly, this claim against defendant Vultaggio is dismissed without prejudice and with

leave to replead.

K.    Leave to Amend

Although the complaints in these five actions are dismissed pursuant to 28 U.S.C. §§

1915A(b), 1915(e)(2)(B), the Second Circuit has repeatedly stated that "[a] *pro se* complaint

should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations in original)). Although some of the defendants enjoy absolute immunity, some of the claims are barred by collateral estoppel and *res judicata*, and yet other claims are precluded by *Heck*, there is a possibility that Grant could allege additional facts to state § 1983 claims against some of the defendants. Accordingly, the Court gives Grant leave to file an amended complaint within 30 days of the date of this Order.

L.    Applications for Appointment of Counsel

"To determine whether to appoint counsel in a civil case, a district court should first consider whether the indigent litigant's position is likely to be of substance." *Ganley v. City of New York*, 734 F. App'x 784, 785–86 (2d Cir. 2018) (summary order) (citing *Hodge v. Police Officers*, 802 F.2d 58, 60–61 (2d Cir. 1986)). "If the district court determines that 'threshold requirement' has been met, it should then consider factors including the litigant's ability to investigate his claims, the litigant's ability to present the case, the complexity of the legal issues, and 'any special reason ... why appointment of counsel would be more likely to lead to a just determination.'" *Id.* (quoting *Hodge*, 802 F.2d at 61–62).

At this juncture, Grant has not met the threshold requirement. Although the Court has granted her leave to file an amended complaint, it remains unclear whether any of her claims will prove to be of substance. Moreover, Grant has not articulated a good reason for appointing counsel. While Grant is clearly entitled to assistance of counsel in the pending criminal case, *see* U.S. Const., amend VI, she does not have a Sixth Amendment right to counsel in civil actions.

M.  <u>Warning</u>

Although the Court understands that Grant is anxious to obtain relief as soon as possible, she must discontinue her practice of filing multiple, duplicative cases with the Court. Judicial resources are limited. "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (citations and internal quotation marks omitted). Grant is warned that the future filing of repetitive, vexatious, and frivolous litigation may result in the imposition of an injunction prohibiting her from making future filings seeking *in forma pauperis* status without leave of the Court. *See Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." (internal quotation marks and citations omitted)); *Pierre v. U.S. Postal Serv.*, No. 18-CV-7474 (MKB), 2019 WL 653154, at *4 (E.D.N.Y. Feb. 15, 2019).

## CONCLUSION

For the reasons stated above, the complaints in each of the above-captioned actions are dismissed. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B). The five actions are consolidated under Docket No. 19-CV-2148 (RRM) (LB), and the Clerk of Court is directed to close the other four cases: Nos. 19-CV-2204 (RRM) (LB), 19-CV-2911 (RRM) (LB), 19-CV-3244 (RRM) (LB), and 19-CV-3689 (RRM) (LB).

Grant shall have 30 days from the date of this Order in which to file an amended complaint. That amended pleading must be captioned "Amended Complaint" and bear docket number 19-CV-2148 (RRM) (LB). If Grant elects to file an amended complaint, that pleading

shall not name defendants who have been dismissed with prejudice or raise claims which have been dismissed with prejudice in this Order. The amended complaint must be entirely legible and should set forth factual allegations in numbered paragraphs, organized in a chronological manner. The paragraphs must give the date and location of the action or omission giving rise to each § 1983 claim, name the specific defendant(s) alleged to be responsible for each action or omission, explain exactly what each defendant did or failed to do, and explain how that action or omission led to a deprivation of Grant's federal constitutional or statutory rights. If Grant fails to file an amended complaint that meets these requirements within the time allowed or to show good cause why she cannot do so, the consolidated action – No. 19-CV-2148 (RRM) (LB) – will be dismissed.

The Clerk of Court is directed to mail a copy of this Order to Grant and to note the mailing on the docket. All further proceedings shall be stayed for 30 days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
    Dec. 2 , 2019

           s/Roslynn R. Mauskopf

           ROSLYNN R. MAUSKOPF
           United States District Judge